

**SIGNED this 20 day of May, 2005.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE

_____

# United States Bankruptcy Court
**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| STINSON AIR CENTER, LLC | 03-52974-C |
| *DEBTOR* | CHAPTER 7 |
| HELEN G. SCHWARTZ, TRUSTEE | |
| *PLAINTIFF* | |
| V. | ADV. NO. 04-5108-C |
| HOWARD S. LOWRY | |
| *DEFENDANT* | |

### DECISION ON COMPLAINT

CAME ON for trial on May 18, 2005 the foregoing matter. This decision constitutes the court's findings and conclusions pursuant to Rule 7052(a) of the Federal Rules of Bankruptcy Procedure.

### Background

Stinson Air Center LLC filed a voluntary petition under chapter 7 of title 11 on May 28, 2003.

Helen G. Schwartz was appointed as trustee.  On August 11, 2004, the trustee initiated this complaint against Howard B. Lowry, to recover transfers made to him pre-petition by the debtor.  An answer and counterclaim was filed.  The court dismissed the counterclaim.  The complaint went to trial on May 18, 2005.  At the conclusion of the case, and after both parties had closed, the court took the case under submission.

### Findings of Fact

Stinson Air Center, LLC, was a limited liability corporation formed under the laws of the state of Texas in 1998.  Howard B. Lowry was the sole shareholder, chief executive officer, and member of the LLC.  During the one year period preceding the filing, Howard B. Lowry received at least $85,000 from the debtor.  Lowry never received a salary from the corporation.  The corporation never withheld income taxes from any distributions it made to Lowry.  Lowry was not an employee of Stinson.  Lowry did take draws out of the corporation, as needed to cover his living expenses.  Lowry never produced, nor did Stinson have in its possession as of the filing, any corporate minute books or similar corporate documentation to reflect whether any distributions were ever authorized to be made to Lowry in his capacity as an equity owner.  Lowry actively managed the corporation's business affairs during the entire one year period prior to filing (and well before that time as well).

Stinson was insolvent during the one year period prior to filing the petition.  The "other assets" item on the Stinson Air Center balance sheet did not have any value to the corporation.  Stinson had no equity ownership interest in any of the entities listed as "other assets," and did not have any documentation to demonstrate that these entities had loaned any money or services to the debtor.  Lowry owned all of the named entities 100%, and owned Warbird Training 50%.  All of the entities were non-operating entities

-2-

which owned aircraft which were then used by Stinson in its operations. The balance sheet continued to carry the "value" of these "other assets" at a static number for the entire period, indicating that the number did not reflect active, ongoing intercompany transactions. These "other assets" were also never listed as assets in any way on the debtor's bankruptcy schedules. The court concludes that no value should therefore be attributed to these "other assets" on the balance sheet. As such, Stinson was balance sheet insolvency for the period reflected in the balance sheets through at least January 28, 2003.

Stinson was not paying its debts in the ordinary course as they came due. Its single most important debt was to the City of San Antonio, for the space it leased for its air operations. Though the lease was not terminated as of filing, it was woefully behind by the filing date, and the debtor had fallen behind on lease payments prior to May 28, 2002. The debtor was also unable to repay student deposits. Its checking account showed a persistent negative balance, rendering the bank where the account was maintained an involuntary creditor. The negative balances persisted for the entire one year period preceding the filing.

### Conclusions of Law

The Trustee seeks recovery under a number of legal theories.

1. *Section 544(b) and the Texas Uniform Fraudulent Transfer Act*

A trustee may step into the shoes of an actual creditor who could have brought an action under the UFTA, and bring such action for the benefit of the entire estate. 11 U.S.C. § 544(b); TEX. BUS. & COMM. CODE, ch. 24 (Thomson West 2004 pamphl. ed.) (TUFTA). There are multiple unsecured creditors *in esse* as of the filing of the chapter 7 case, as reflected on the debtor's bankruptcy schedules. In addition, the City of San Antonio was a present creditor as that term is defined in section 24.002(4) of the TUFTA.

The trustee's recovery is not limited by the amount of the unsecured claim of the actual creditor in question. *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800 (9th Cir. 1994); *Matter of Leonard*, 125 F.3d 543 (7th Cir. 1997).

The trustee, under section 24.005, may recover a transfer made for less than reasonably equivalent value. Value is defined as either property transferred or an antecedent that is satisfied. The transfers here were draws taken by an insider of the debtor. Lowry claims that these draws were taken in exchange for his services as CEO, but the evidence fails to demonstrate that the debtor had any compensation arrangement whatsoever with Lowry. The draws were described as such by both Lowry and his office manager, and are more correctly characterized as simple withdrawals by the owner of the company by virtue of his ownership interest in the company. In other words, they were a return of equity. An expectation of a return on equity is not a claim within the meaning of TUFTA. Lowry's efforts expended on behalf of his company were the expected investment of time and energy that any entrepreneur of a closely held business might be expected to make. Short of an actual employment agreement, or evidence to indicate that Lowry drew a salary (such as, for example, income tax withholding by the corporation), Lowry's efforts were simply those of an entrepreneur. Thus, he did not give reasonably equivalent value in return for his draws – he simply took money out of the company because he needed it (or wanted it). So long as the company was solvent and was a going concern, that arrangement would not be particularly remarkable.[1] Once the company entered the zone of insolvency, the rules changed.

The debtor, during the period in question, made the transfers to an insider, as that term is defined

---

[1] Though the characterization of these draws could have independent tax consequences not addressed here.

in TUFTA, while the debtor was insolvent.  Insolvency, for purposes of TUFTA, is present when the sub

of the debtor's debts is greater than all of the debtor's assets at a fair valuation.  TUFTA, § 24.003(a).

The debtor's balance sheet, when the "other assets" category is subtracted out (because, at "fair value,"

these assets have no value), shows the debtor to have been insolvent at least through the end of January,

2003.[2]

A debtor is presumed to be insolvent when the debtor is generally not paying its debts as they

become due.  The evidence establishes that the debtor was in fact not paying its debts as they became due.

The only evidence offered to rebut this testimony was that of Lowry himself, who claimed that the enterprise

had a significant going concern value that he was simply not able to realize because Jefferson State Bank

refused to work with him.  The court does not find that evidence sufficient (or sufficiently credible) to rebut

the presumption.  Thus, the debtor was insolvent within the meaning of section 24.003(b) of TUFTA.

Because the debtor made transfers to an insider while it was insolvent, the transfers may be avoided

under section 24.006(b), if the evidence demonstrates that the insider had reason to believe that the debtor

was insolvent.  The evidence so demonstrates.  Lowry was well familiar with the debtor's financial

conditions at all relevant times, well knew of the relationship that it had with its bank, with its landlord, and

with its related entities.  Lowry had cause to believe that the debtor was insolvent, whether he actually

---

[2] Lowry suggests that the court should also add in the value of the leasehold to the City of San Antonio, as well as the claim against XL Specialty Insurance Co.  The leasehold interest had no value prior to filing, however.  The value that it might have had to the bankruptcy estate by virtue of the power of the trustee to assume and assign the lease via section 365(f) is a value that could not have been present as a matter of law until after the bankruptcy case was filed.  No evidence was presented to indicate that the lease could have been similarly "assumed and assigned" outside of bankruptcy by the debtor pre-petition, especially in view of the significant defaults outstanding.  As for the litigation, no evidence was presented that the lawsuit was in fact worth the amount alleged in the pleadings prior to the filing.  The fact that the trustee is pursuing the litigation, and hopes to recover on it does not mean that, *ipso facto*, it must have been worth prior to bankruptcy what the trustee is trying to recover today.

chose to face that reality or not. The statute does not require a finding that he actually *knew* the enterprise was insolvent, or even that he *believed* it to be insolvent.

The transfers in question would also qualify as fraudulent under section 24.006(a) of TUFTA. As already noted, Stinson did not receive reasonably equivalent value for the draws taken by Lowry because Lowry did not take his draws as an employee. He took them as an owner. He was thus extracting equity from an enterprise that was insolvent.

The trustee may recover the value of the asset transferred, which in this case was at least the sum of $85,000.

The trustee may also recover costs and reasonable attorneys' fees under section 24.013 of TUFTA. This provision became effective September 1, 2003. This litigation was initiated on August 11, 2004. The right of recovery applies to "any proceeding under this chapter [*i.e.*, chapter 24 of the Texas Business and Commerce Code]." The proceeding in question was initiated after the effective date of amendment, so section 24.013 applies.[3] The trustee may therefore seek, via post-trial submission, in accordance with the local rules, attorneys' fees and costs.

2. *Section 548*

A trustee may avoid as fraudulent a transfer made for less than reasonably equivalent value within one year of the bankruptcy filing, if the debtor was insolvent on the date the transfer was made. 11 U.S.C. § 548(a)(1)(B)(ii). The trustee cannot establish the precise dates of the transfers in question, however.

---

[3] Lowry contends that section 24.013 could not apply because it only became effective on a date after the date of the filing of the bankruptcy case. Section 544(b) does not limit the trustee's cause of action in this way, however. The statute says that the trustee may avoid any transfer of an interest of the debtor in property "... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title ..." The statute does *not* say voidable "as of the date of the commencement of the case." The court declines to add such a gloss.

What is more, only balance sheet insolvency counts for purposes of this provision.  *See* 11 U.S.C. § 101(32).  Thus, the court concludes that the trustee has not sustained her burden to establish a transfer under section 548(a)(1)(B).

The court also concludes that the evidence is insufficient to establish that Lowry took his draws with actual intent to hinder, delay, or defraud creditors.  Although some evidence of some of the badges of fraud are present, the quantum of evidence presented fails to sustain the heavy burden of proof that a plaintiff must sustain to establish this cause of action.

3. *Section 547*

The trustee alternatively argues that the transfers in question constitute a voidable preference under section 547(b).

If (and only if) one were to accept Lowry's contention that his "draws" constituted wages for his services to the company, then those draws would constitute preferential transfers.  They are transfers of property of the debtor (*i.e.*, the debtor's cash) to Lowry, a "creditor" by virtue of the work performed, on account of an "antecedent debt" (to wit, the services rendered to the company, for which he claims entitlement to be compensated),[4] made within one year of filing (Lowry is an insider as that term is defined under the Bankruptcy Code), while the debtor was insolvent (the insolvency is presumed for the three months preceding the filing, and established by the evidence for the balance of the previous year), that

---

[4] Lowry's contentions that the "debt" could not be antecedent because it was contemporaneous confuses the elements of the trustee's cause of action with the elements of the defendant's affirmative defenses.  Contemporaneous transfer is an affirmative defense to a preference action precisely because the transaction, though substantially contemporaneous is nonetheless at least technically for an antecedent debt.  A debt need not be antecedent by much to be antededent: one could borrow money for lunch in the morning and repay it in the evening.  The repayment is of an antecedent debt, albeit one of only a few hours' duration.

enabled Lowry to receive more than he would have received in a chapter 7 distribution had he not received the draws.  *See* 11 U.S.C. § 547(b).

Lowry's affirmative defense was contemporaneous transfer for new value.  The evidence failed to establish this defense.  Lowry never matched the draws to the actual work that he performed.  He testified that he took money when he needed it, and took as much as he needed.  He did not measure how much he took out by how much he had put into the company in terms of work performed.  More to the point, there is insufficient evidence to match up the draws that he took to the work he says he did.  Not all the draws were accounted for.  Thus, the defense fails.

Thus, the court finds, in the alternative that, if Lowry is to be believed that he *was* in fact being compensated for his services as CEO, then the compensation that he took constituted a preferential transfer under section 547(b), which the estate may recover under section 550 of the Code.

4.  *Breach of fiduciary duty*

The court concludes that the evidence presented is insufficient to establish breach of fiduciary duty on the part of Lowry.

## Conclusion

For the reasons stated, the court concludes that judgment should be entered in favor of the trustee under the Texas Uniform Fraudulent Transfer Act and Section 544(b) of the Bankruptcy Code for $85,000, plus attorneys' fees and costs.

The court further concludes that judgment should be entered in favor of the defendant that the plaintiff take nothing on her causes of action under section 548(a)(1)(B) of the Bankruptcy Code and for breach of fiduciary duty.

-8-

The court further concludes that, if and only if an appellate court were to determine that the defendant, Lowry, received draws as compensation for his services as CEO, then the trustee may recover the sum of $85,000 from Lowry as a preferential transfer under section 547(b) of the Bankruptcy Code.

A separate judgment shall be prepared, consistent with this decision. The trustee is directed to submit a form of judgment consistent with this decision. The trustee is further directed to submit her request for attorneys' fees in accordance with the local rules of this district.

# # #